**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

KEITH DAVIDSON,                    )
                                   )
            Plaintiff,             )
                                   )
    vs.                            )        NO. 1:13-CV-2307-WSD-ECS
                                   )
CAPITAL ONE BANK (USA), N.A.,      )
                                   )
            Defendant.             )

**PLAINTIFF'S RESPONSE TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RE
MOTION TO DISMISS AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendant Capital One Bank (USA), N.A. ("Capital One") has acquired, as a regular part of its business activities, over $1 billion in delinquent accounts from other financial institutions.

Although Capital One could readily sell these debts, it does not.  Instead, it attempts to collect them by suit and otherwise.

With one exception, the Courts of Appeal and numerous other courts hold that a party who engages in such activities is subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").  The Magistrate Judge agreed. Capital One asserts that all of these decisions are contrary to the "plain meaning" of the FDCPA.  In fact, it is Capital One that is wrong.

## II.    FACTS

Plaintiff Keith Davidson brought this action to secure redress against unlawful collection practices engaged in by Capital One.  Plaintiff Keith Davidson is a resident of Lawrenceville, Georgia.   (Amended Complaint ["AC"], ¶5) Defendant Capital One Bank (USA), N.A., is a federally chartered corporation with offices in Virginia. (AC, ¶6)  Capital One has regularly acquired credit card

1

portfolios containing over $1 billion of accounts that were delinquent or in default at the time of acquisition.   (AC, ¶7-13)  Capital One states that "We continue to evaluate and anticipate engaging in . . . selected acquisitions of . . . financial assets, including credit card and other loan portfolios." (AC, ¶14-15)   There are some immaterial disputes as to how many portfolios defendant, as opposed to related entities, acquired, but the delinquent and defaulted consumer debts acquired by Capital One exceeded $1 billion, including plaintiff's debt.

Many or most of the credit card receivables on accounts issued by Capital One are securitized, and thus actually owned by others (securitization trusts).  At year end 2012, there were over $205 billion in securitized receivables on accounts issued by Capital One.  Most of these were credit card receivables.  (AC, ¶16)  The HSBC credit card portfolio and other acquired portfolios were also heavily securitized.   (AC, ¶17)

Capital One has attempted to collect such delinquent or defaulted debts in the regular course of its business, using the mails and telephone system in doing so.  (AC, ¶18)  Capital One could have sold the delinquent accounts to other debt buyers, as there is a substantial market for such debts, but chose to retain and collect them itself.  (AC, ¶19)

Plaintiff complains of Capital One's practice of serving consumers with fraudulent affidavits in collection lawsuits.  In 2007, HSBC had filed suit against Keith Davidson to collect a credit card account ending in 7155.  (AC, ¶21)  Davidson had used the account for personal, family, or household purposes and not for business purposes.  (AC, ¶22)  On April 3, 2008, judgment was entered in favor of HSBC and against Davidson in the sum of $500.  (AC, ¶23 and App. B)  The underlying contract was merged into the judgment by operation of law.   (AC,

¶24)

The "account" was one of those sold by HSBC to Capital One Bank

(USA), N.A.   (AC, ¶25)   On or about August 10, 2012, Capital One filed a second

lawsuit against Davidson to collect $1,149.96 on the same account ending in 7155

that had been the subject of the 2007 lawsuit.   (AC, ¶26-27 and App. C)

Attached to the 2012 complaint was an affidavit executed by Jocelyn

Faircloth-Boone. (AC, ¶28 and App. D) The affidavit states:

> 1.     My Name is Jocelyn Faircloth-Boone.  I am over the age of eighteen
> and authorized to make this Affidavit on behalf of Capital One Bank (USA),
> N.A. (Identified in this affidavit as "Capital One"), assignee of HSBC
> BANK NEVADA, N.A.  The facts stated herein are within my personal
> knowledge and are true and correct and are based on my review of the books
> and records of Capital One.   If called as a witness, I can testify competently
> to the facts contained herein.
>
> 2.     On or about 05/01/2012, HSBC sold account number ************
> 7155 in the name of Keith Davidson by a Purchase and Assumption
> Agreement and a Bill of Sale to Capital One.  As part of the sale of the Sold
> Account, certain of HSBC's records relating to the Sold Account were
> transferred to Capital One.  Those records were made and/or recorded as part
> of the regular course of business of HSBC at or near the time of the acts,
> events, conditions or methods recorded.  Because of the sale of the Sold
> Account, Capital One became the owner of the Sold Account on the date of
> sale.  (AC, ¶29)

The affidavit was a form, designated "COF 042612.2."  (AC, ¶30)   All affidavits

in the form represented by AC, App. D are prepared in the same manner using the

same procedures.  (AC, ¶31)

The statements in the affidavit were false, given the fact that the account had

been reduced to judgment in the amount of $500.   (AC, ¶32)   In fact, Jocelyn

Faircloth-Boone had no personal knowledge of the account, and had reviewed little

or no "books and records" before signing the affidavit.  (AC, ¶33)

The 2012 collection complaint (AC, App. C) was also false.  It falsely

represented that "Defendant(s) owes the Plaintiff the below principal balance

[$1,149.96] plus accrued interest arising from a default on a credit card agreement."  (AC, ¶34)

Davidson was required to hire counsel to defend the 2012 lawsuit.  (AC, ¶35)

In each collection lawsuit Capital One files in the state of Georgia, it files and serves upon the consumer a  mass-produced, "robo-signed"  affidavit.  (AC, ¶36)  Employees who "robo-sign" the affidavits have no personal knowledge of their "facts" attested to and do not acquire complete files from which they can legitimately conclude that the consumers owe the amounts claimed.  (AC, ¶37)  Prior to filing debt collection lawsuits, Capital One engages in practices that place a premium on quick collections over accuracy.  (AC, ¶38)  As in the case of Mr. Davidson, Capital One sometimes attempts to collect debts that have been paid, settled, or are otherwise legally uncollectible.  (AC, ¶39)

In filing debt collection lawsuits against consumers, Capital One defrauds consumers by  using false affidavits that are "robo-signed" by individuals who have no knowledge of the alleged debts.  (AC, ¶40)  Many people subjected to Capital One's practices do not understand the court system, cannot afford to hire an attorney, and/or feel forced into settling a lawsuit in which Capital One may be seeking a total judgment that has ballooned to more than twice the principal amount of the alleged debt due to interest, attorneys' fees, etc.  (AC, ¶41)  Capital One has affirmatively deceived and defrauded consumers by filing false, mass produced, computer-generated affidavits that are "robo-signed," or signed without the affiant reading the contents of the document, and/or signed by Capital One employees with no personal knowledge of the validity of the debt or other facts to which they are attesting.  (AC, ¶42)

4

The only issue raised by Capital One's motion to dismiss is whether a company that, as part of its regular business activities, acquires over $1 billion in charged-off consumer debts and attempts to collect them is a "debt collector" subject to the FDCPA.   As demonstrated below, Capital One is a "debt collector" because it "regularly" acquires and collects defaulted debts originally owed to others.  (Plaintiff does not contend that the principal purpose of Capital One is debt collection.)

## III.   THE FAIR DEBT COLLECTION PRACTICES ACT

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. §1692(e).  This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt.  It also requires debt collectors to give debtors certain information about alleged debts, and about their rights as consumers.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the

universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule....  [The] vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

*Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008) held that

> the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated.

See *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D.Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose").  Further, "Congress intended the Act to be enforced primarily by consumers...."  *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980).  The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

Plaintiffs need not prove intent, bad faith or negligence; "debt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions."  *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009).  And pursuant to 15 U.S.C. §1692k, statutory damages are recoverable for violations regardless of whether the consumer proves actual damages – "[all] that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling."  *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).  *Accord*, *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 444 (N.D.Ill. 2008); *Blarek v. Encore Receivable Management*, 244 F.R.D. 525, 528 (E.D.Wis. 2007).

## IV.   PURCHASERS OF DELINQUENT DEBTS ARE SUBJECT TO THE FDCPA

The overwhelming weight of authority holds that companies that regularly purchase and collect defaulted consumer debts originally owed to others are regulated by the FDCPA.  "The legislative history of section 1692a(6) [which defines 'debt collector'] indicates conclusively that a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 USCCAN 1695, 1698. Conversely, the assignee of a debt that is in default at the time of the assignment is a "debt collector," if either the assignee's principal purpose is the collection of delinquent debts, or the assignee regularly engages in the collection of delinquent debts.

The leading decision is *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1486 (M.D.Ala. 1987) (Myron Thompson, J.), where the court analyzed the language of the FDCPA at length, found it ambiguous with respect to the growing practice of purchasing bad debts, and held that purchasers were covered.  "[T]he court must therefore conclude that, even though FFC collects debts for itself, it is still a debt collector within the meaning of §§ 1692a(4) and 1692a(6) of the Act, because the corporation regularly collects debts . . .  and because the debts the corporation collects were already in default when they were assigned to the corporation and thus the corporation falls within the assignee exception to the definition of creditor."

Following *Kimber*, the federal courts have consistently held that a company that purchases and attempts to collect delinquent debts as a regular part of its

business activities is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts.

In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), the Eleventh Circuit imposed FDCPA liability on a debt buyer, finding it "undisputed that Unifund is a 'debt collector' seeking to recover from LeBlanc on an outstanding 'consumer debt.'" (601 F.3d at 1193)

Decisions of the Third, Fifth, Sixth and Seventh Circuits hold that purchasers of delinquent consumer debts are covered by the FDCPA:

      **1.**      **Third Circuit:**  *Pollice v. Nat'l Tax Funding*, 225 F.3d 379, 403 (3d Cir. 2000) ("an assignee may  be deemed a 'debt collector' if the obligation is already in default when it is assigned"); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired");

      **2.**      **Fifth Circuit:**  *Perry v. Stewart Title Co.*, *supra,* 756 F.2d 1197, 1208 (5th Cir. 1985);

      **3.**      **Sixth Circuit:** *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) ("we hold that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition"); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (following *Perry*).

      **4.**      **Seventh Circuit:**  *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir.  2008) ("the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.

2003) ( "In other words, the Act treats assignees as debt collectors if the debt sought to be collected  was in default when acquired by the assignee, and as creditors if it was not [in default]."); *Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009) ("[A] party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, 'even though it owns the debt and is collecting for itself.'").

Decisions of this court have also held that debt buyers are subject to the FDCPA. In  *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293, 1301 (N.D.Ga. 2010), the court held that debt buyer Palisades is subject to the FDCPA even though it purchased defaulted debt outright, stating that "a 'creditor' may be treated as a 'debt collector' under the FDCPA if the creditor bought a debt already in default at the time of purchase for the purpose of collecting it directly".  The court cited the Seventh Circuit decision in *Schlosser* with approval.  *Accord*, *Bates v. Novastar/ Nationstar Mortgage LLC*, 1:08cv1443, 2008 WL 2622810, *5-6 (N.D.Ga., June 24, 2008) (court recognizes that outright owner of debt "could also be a 'debt collector' subject to the statute, if the debt was already in default at the time the creditor acquired it)"; *Anderson v. Deutsche Bank Nat'l Tr. Co.*, 1:11cv4091, 2012 WL 3756512 (N.D.Ga. Aug. 6, 2012) ("a consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors' so long as the debt was not in default at the time it was assigned"), adopted, 2012 WL 3756435 (N.D.Ga., Aug. 27, 2012).  So have other decisions from within the Eleventh Circuit.   *Williams v. Edelman*, 408 F.Supp.2d 1261, 1266 (S.D.Fla. 2005); *Monroe v. CitiMortgage, Inc.*, No. 8i:07cv0066-SCB-TGW, 2007 WL 15601904, *2 (M.D.Fla. May 29, 2007).

Indeed, "the overwhelming weight of authority both in this circuit and in

other circuits confirms the majority opinion in *McKinney*, namely, that a person who attempts to collect on a debt acquired after default is a 'debt collector' under the FDCPA." *Zirogiannis v. Dreambuilder Investments*, 782 F.Supp.2d 14, 19-20 (E.D.N.Y. 2011).  *Accord*, *Durkin v. Equifax Check Servs.*, 00 C 4832, 2002 WL 31426397, 2002 U.S. Dist. LEXIS 20742 (N.D.Ill., Oct. 24, 2002) ("Third-party collectors that purchase debts after default and attempt collection on those debts do collect debts owed another", relying on *Kimber*); *Cirkot v. Diversified Systems*, 839 F.Supp. 941 (D.Conn. 1993)(following *Kimber*); *Dolan v. Fairbanks Capital Corp.*, 03cv3285, 2008 WL 4515932, *10 (E.D.N.Y., Sept. 30, 2008) (mortgage company that acquires defaulted loan is a debt collector);  *Commercial Service of Perry v. Fitzgerald*, 856 P.2d 58, 62 (Colo.App. 1993) ("[A] company which takes an assignment of a debt in default, and is a business the principal purpose of which is to collect debts, may be subject to the Act, even if the assignment is permanent and without any further rights in the assignor," following *Kimber*); *Midland Funding, LLC v. Giraldo*, 39 Misc.3d 936, 961 N.Y.S.2d 743 (Dist. Ct. 2013).

The Federal Trade Commission has taken the position that purchasers of defaulted consumer debts are FDCPA "debt collectors."  *FTC v. Check Investors, Inc.*, *supra*; January 30, 2013 Federal Trade Commission report, *The Structure and Practices of the Debt Buying Industry*,"[1]  at pp. 3-4 ("Some debt buyers have argued that because they collect debts they own, not debts others own, the FDCPA does not govern their activities because they are creditors.  In the seminal decision in *Kimber v. Federal Financial Corp.*, the court rejected that argument, holding that debt buyers that seek to recover on debts that were in default when the debt

---

[1]  www.ftc.gov/os/2013/01/debtbuyingreport.pdf

buyers acquired them are debt collectors for purposes of the FDCPA.  Since
*Kimber*, many other courts have concluded that such debt buyers are debt
collectors for purposes of the FDCPA"); FTC Report, *Collecting Consumer Debts:
The Challenges of Change*, p. 5 (2009)[2]  ("The FDCPA applies to third-party "debt
collectors," a term that includes contingency agencies, collection law firms, and
debt buyers, but generally does not include creditors' in-house collectors.
Congress's rationale for applying the statute only to third-party collectors was that,
"[u]nlike creditors, who generally are restrained by the desire to protect their good
will when collecting past due accounts, independent collectors are likely to have no
future contact with the consumer and often are unconcerned with the consumer's
opinion of them."); FTC Report, *Repairing a Broken System: Protecting
Consumers in Debt  Collection Litigation and Arbitration,* p. 6 n. 15 (2010)[3]
("Debt buyers – persons who collect debt on their own behalf that they have
purchased from creditors or debt collectors – are covered by the FDCPA if the
accounts were in default at the time the debt buyers purchased them. FDCPA §§
803(4), 803(6); 15 U.S.C. §§ 1692a(4), 1692a(6); *see also Ruth v. Triumph
P'ships*, 557 F. 3d 790, 796-97 (7th Cir. 2009); *FTC v. Check Investors*, 502 F. 3d
159, 171-72 (3d Cir. 2007)").

     The FTC position dates back to at least 1993, when an FTC staff opinion

---

[2]  www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

[3]  www.ftc.gov/os/2010/07/debtcollectionreport.pdf

letter (Appendix A) endorsed the construction of the FDCPA in *Kimber* and stated that the FTC considered a debt buyer to be an FDCPA "debt collector." "In sum, it is our view that a party that obtains consumer obligations in default for the purpose of collection is a 'debt collector' under the FDCPA, even if that party actually purchases the accounts from the original creditor."

In 2004, the Federal Trade Commission shut down debt buyer CAMCO, alleging violation of the FDCPA. (Appendix B) The press release issued by the FTC in connection with that case noted that "CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor."[4] The filing of a complaint is voted upon by the Commission and represents an official statement that the conduct complained of violates the statute.

The Consumer Financial Protection Bureau, which has taken over some of the FTC's responsibility with respect to the FDCPA, has agreed that debt buyers are subject to the FDCPA. 2013 FDCPA Annual Report, p. 14 n. 14.[5]

Moreover, Congress has acquiesced in the consistent construction of the FDCPA as covering debt buyers. The FDCPA is not an obscure enactment that escapes Congressional attention – it has been amended not less than 10 times since *Kimber.* (1) Pub.L. 111-203, Title X, §1089(2), July 21, 2010, 124 Stat. 2092. (2) Pub.L. 109-351, Title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006. (3) Pub.L. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425. (4) Pub.L.

---

[4] www.ftc.gov/opa/2004/12/camco.htm

[5] http://files.consumerfinance.gov/f/201303_cfpb_March_FDCPA_Report1.pdf

104-88, Title III, § 316, Dec. 29, 1995, 109 Stat. 949.  (5)  Pub.L. 102-550, Title
XVI, § 1604(a)(8), Oct. 28, 1992, 106 Stat. 4082.  (6) Pub.L. 102-242, Title II, §
212(e), Dec. 19, 1991, 105 Stat. 2301.  (7) Pub.L. 101-73, Title VII, § 744(n), Aug.
9, 1989, 103 Stat. 440.  (8)  Pub.L. 98-443, § 9(n), Oct. 4, 1984, 98 Stat. 1708.  (9)
Pub.L. 95-630, Title V, § 501, Nov. 10, 1978, 92 Stat. 3680.  (10)  Pub.L. 95-473,
§ 3(b), Oct. 17, 1978, 92 Stat. 1466.   At no time has Congress rejected the
consistent construction of courts, the FTC, and the CFPB that purchasers of
defaulted debts are covered.

The administrative construction of the FDCPA is entitled to deference.
*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837
(1984).  Moreover, Congressional acquiescence in repeated administrative and
judicial construction of statutory language is entitled to great weight, even to the
point of "add[ing] a gloss or qualification to what is on its face unqualified
statutory language."   *Saxbe v. Bustos*, 419 U.S. 65, 74 (1974).

Although a large number of judges and administrators have thus concluded
that the FDCPA definitions are ambiguous, and that the construction of the
FDCPA urged by plaintiff and adopted by the Magistrate Judge is correct, Capital
One asserts that all of these authorities are contrary to the "plain language of the
statute."

For Capital One to insist that its reading of the FDCPA is required by its
unambiguous "plain meaning" even though numerous judges and administrative
officials who have studied the text have come to the opposite conclusion is
inherently illogical.  If "[s]tatutory language is ambiguous if it is susceptible to
more than one reasonable interpretation" (Def. Obj., p. 7), the fact that a large
number of presumably reasonable jurists have interpreted language in a certain

way indicates that such interpretation is reasonable for purposes of determining whether an ambiguity exists. The Fifth Circuit so concluded in a pre-1980 decision binding on this Court, *Boston Ins. Co. v. Gable*, 352 F.2d 368, 370 (5th Cir. 1965) ("we agree with the trial court's further conclusion that since the interpretation of this contractual language has been differently construed by courts of different jurisdictions," it is ambiguous, and therefore should be construed against the insurance company), as have other courts, *Lefrak Organization, Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949, 957 (S.D.N.Y. 1996) ("the range and variety of judicial opinions" deriving different meanings from the same language in a form insurance policy supports the conclusion that it is ambiguous, i.e., can reasonably be interpreted to mean different things).

## V.    THE FDCPA DEFINITION OF "DEBT COLLECTOR" CONTAINS AMBIGUITIES

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails [1] in any business the principal purpose of which is the collection of any debts, [2] or who regularly collects or attempts to collect, directly or indirectly, debts [3] owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) [bracketed numbers added]. Exemptions are provided for, among others, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person" (§1692a(6)(F)(iii)) and "a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." (§1692a(6)(F)(iv))

Capital One seeks to distinguish the authorities agreeing with the construction of the FDCPA urged by plaintiff and adopted by the Magistrate Judge by claiming that a debt buyer is covered under [1] but not [2], and that clause [3]

14

only applies to the word "debts" when it appears in [2] but not in [1].  Based on this, Capital One asserts that entities whose principal purpose is buying debts are subject to the FDCPA, but those (such as itself) that regularly buy bad debts as part of larger business operations are not.

There are several problems with Capital One's argument.  First, "owed or due or asserted to be owed or due another" obviously modifies "debts," and most logically modifies it each time it appears.  It would be odd for the same word to have different meanings in the same sentence.  "[T]here is a presumption that a given term is used to mean the same thing throughout a statute."  *Brown v. Gardner,* 513 U.S. 115, 118 (1994).

Second, under Capital One's reading, the exemption in §1692a(6)(F)(iv) would be completely superfluous, and that in §1692a(6)(F)(iii) largely so.  Statutes are generally not construed in such a manner that substantial portions are meaningless or superfluous. *Kozak v. Hillsborough County, Fla.*, 644 F.3d 1347, 1349 (11th Cir. 2011).

As noted, the §1692a(6)(F)(iv) exemption exempts "a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."  A secured party, by definition, is not engaged in the principal business of collecting debts, but in extending secured credit.  It is also, by definition, collecting for itself, having acquired debts by foreclosing on a portfolio of receivables, and is not acting as agent for another.

The fact that an exemption or exclusion was created indicates that but for the exemption the activities exempted would be within the basic scope of the statute.  As a matter of common sense the existence and language of an exclusion from a definition are indicative of the meaning and scope of the basic definition.  *Admiral*

*Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 02 Civ. 2195(RWS),  2002 WL 31409450, *4, 2002 U.S. Dist. LEXIS 20306  (S.D.N.Y., Oct. 24, 2002) (the question arises with some frequency in the context of insurance coverage).

The §1692a(6)(F)(iii) exemption presumes that the "person" has "obtained" a debt.  The core meaning of "obtain" is to get or acquire. Webster's New World College Dictionary, 4th Ed. (accessed January 12, 2014).   What then is meant by a person collecting a delinquent debt "owed or due or asserted to be owed or due another" that has been "obtained" by the first person?

Other courts have recognized that the language of the FDCPA creates an ambiguity concerning the application of the statute to entities that purchase large volumes of defaulted debt.  *Kimber, supra*.  The ambiguity relates to (a) whether phrase [3], "owed or due another," applies to [1] as well as [2] and (b) the temporal relationship between "obtained" and "owed or due another".   Analyzing the consumer-protective purposes of the FDCPA, the courts have resolved the ambiguity by holding that it applies to both phrases, and that the temporal relationship contemplated by Congress is that the debt was  "originally" or "previously" owed or due another, so that entities that acquire debts that are delinquent at the time of acquisition are covered, whether they do so as part of their regular business activities or as their principal business activity.

Although offered for the purpose of reconciling the decisions, Capital One's argument does not in fact do so.  Many of the decisions holding purchasers of defaulted debt to be subject to the FDCPA involved entities whose principal purpose was not the purchase of debt, although they did so regularly.  *E.g.*, *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (mortgage servicer); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)

16

(same); *Bates v. Novastar/ Nationstar Mortgage LLC*, 1:08cv1443, 2008 WL 2622810, \*5-6 (N.D.Ga., June 24, 2008) (same); *Anderson v. Deutsche Bank Nat'l Tr. Co.*, 1:11cv4091, 2012 WL 3756512 (N.D.Ga. Aug. 6, 2012) (same); *Monroe v. CitiMortgage, Inc.*, No. 8:07cv0066-SCB-TGW, 2007 WL 15601904, \*2 (M.D.Fla. May 29, 2007) (same); *Dolan v. Fairbanks Capital Corp.*, 03cv3285, 2008 WL 4515932, \*10 (E.D.N.Y., Sept. 30, 2008) (same).

Capital One' s "plain meaning" argument is thus ill-founded.  The meaning of the statute, considered as a whole, is not "plain," as recognized by the numerous decisions rejecting its interpretation.

Once it is recognized that an ambiguity exists, consideration of the purpose of the FDCPA in resolving it is appropriate. *Serna v. Law Office of Joseph Onwuteaka, P.C.,* 732 F.3d 440, 445 (5th Cir. 2013) (issue was when claim for violation of FDCPA §1692i accrues; court held that because the term "bring such action" in FDCPA was ambiguous, "the FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice"); *Zortman v. J. C. Christensen & Associates, Inc.*, 819 F.Supp.2d 874, 879  (D.Minn. 2011) (FDCPA's purpose considered in resolving issue of whether "communication" requires deliberate or purposive intent to convey information); *Marisco v. NCO Financial Systems, Inc.,* 946 F.Supp.2d 287, 292-93  (E.D.N.Y. 2013) (same); *Thompson v. Diversified Adjustment Service, Inc.*, No. H-12-922, 2013 WL 2973976 (S.D.Tex., July 31, 2013) (same); *Robinson v. Nationstar Mortgage, LLC*, 2:12cv718, 2012 WL 5596421, \*5 (S.D.Ohio, Nov. 15, 2012) (court found FDCPA ambiguous as to whether each successive debt collector had to give new §1692g notice, and resolved issue in favor of that interpretation which "best promotes the goal of protecting consumers").  Purposive interpretation of an ambiguous statute

does not violate any prohibition against judicial legislation.

Economically, the sale of delinquent debts is equivalent to their collection on a commission basis.  As explained by the Federal Trade Commission ("The Structure and Practices of the Debt Buying Industry," January 2013, pp. 11-12):

> Although creditors traditionally either collected their debts themselves or retained a third-party debt collector to collect on their behalf, creditors now have a third option. Creditors may sell debts they own to debt buyers. Debt buyers, in turn, may either try to collect on purchased debts themselves, hire a third-party debt collector to recover on these debts for them, or resell these debts to other debt buyers. As with the collection of debts, the selling of debts by creditors decreases the losses they incur in extending credit, which, in turn, is likely to lead to an increase in the amount of credit extended and a decrease in the price of that credit.
>
> In some circumstances, creditors may prefer to use third parties to collect debts rather than selling them to debt buyers. Third-party debt collection affords creditors greater control over how debt collectors interact with consumers, which may be important to creditors that are particularly interested in avoiding reputational harm (*e.g.*, hospitals collecting on medical debts). Ongoing cooperation between creditors and third-party debt collectors also may result in an efficient and effective collection process that leads to greater returns for creditors than selling the debts.
>
> In other circumstances, creditors may prefer to sell their debts. For example, creditors may sell debts to avoid the costs of coordinating and monitoring the conduct of third-party debt collectors. Or creditors may choose to receive an immediate and guaranteed amount from debt sales rather than receiving a delayed and uncertain amount as a result of the efforts of third-party debt collectors. . . .

Furthermore, the existence of a debt buying market means that Capital One could completely avoid any issue of FDCPA liability by selling the delinquent debts it acquires instead of taking collection action itself.  FDCPA liability requires not only that the defendant be a "debt collector," but that it do something to violate the FDCPA, such as make false statements in a collection action.

In short, the Report and Recommendation correctly rejected Capital One's "plain meaning" argument.

## VI.   THE NINTH CIRCUIT DECISION RELIED ON BY CAPITAL ONE

**IS INCORRECT**

The only case to depart from the authorities discussed above is *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. 2013). Schlegel did not really present the issue before this Court because, as the Report and Recommendation noted, the debt in Schlegel had been rewritten and was not a debt in default. Without discussing or citing *Kimber* or any of the other decisions or administrative statements squarely finding that one who regularly purchases delinquent debts is a "debt collector" subject to the FDCPA, a Ninth Circuit panel summarily decided that there were no factual allegations "from which [the court] could plausibly infer that Wells Fargo regularly collects debts owed to someone other than Wells Fargo." (720 F.3d at 1209)

*Schlegel* inappropriately concluded that there was no ambiguity in §1692a(6) by ignoring the exemptions, with the comment that they are irrelevant. 720 F.3d at 1208 n. 3. However, statutes are to be construed as a whole, and courts "may consider Congress's use of a particular term elsewhere in the statute to determine its proper meaning within the context of the statutory scheme." *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1374 (11th Cir. 1999). Even the decisions relied upon by Capital One hold that "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Medical Transportation Management Corp. v. Commissioner of Internal Revenue*, 506 F.3d 1364, 1368 (11th Cir. 2007).

If "owed or due another" means "originally" or "prior to the time 'such person' 'obtained' the debt" in an exclusion, it is not reasonable to hold that it only means "at the present time" in the basic definition. It is also unreasonable to

construe the basic statutory language as not covering assignees if there are exclusions covering some assignees; if the basic statutory language does not cover assignees there is no need for an exclusion at all, and the two that are provided are surplusage.  As noted above, the existence and language of an exclusion from a definition are indicative of the meaning and scope of the basic definition.   At the very least, such usage of language creates an ambiguity that requires consideration of the policies served by the FDCPA, which is what the *Kimber* court did.  That decision represents the consistent judicial and administrative construction of the FDCPA over the last 25 years  –  to include persons who purchase defaulted debts as a regular part of their business activities  –  during which time the FDCPA has been repeatedly amended by Congress without disturbing the construction originally adopted in *Kimber*.

## VII.  AS A RESULT OF SECURITIZATION, MANY OR MOST CAPITAL ONE RECEIVABLES ARE ACTUALLY OWNED BY OTHERS

Capital One also conveniently ignores paragraphs 16-17 of the amended complaint, which allege that many of the debts at issue are securitized, before and after Capital One acquires them.   Indeed, the volume of securitized debts serviced by Capital One is several times the volume of debts actually owned by Capital One.  Thus, not only does Capital One regularly collects defaulted debts *originally* owed to others, but it regularly collects defaulted debts that are *still* owed to others.

## VIII.  CONCLUSION

Capital One is a "debt collector" with respect to delinquent debts it purchases.  It urges a construction of the FDCPA that is contrary to the great weight of authority and the views of the agencies that administer the FDCPA, and that if accepted "would create a loophole in the FDCPA. A big one."  *Reese v.*

*Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012). A company which, as a regular part of its business, acquires **billions** in defaulted debts and tries to collect those debts should be, and is, subject to the FDCPA.   Its motion to dismiss should be denied.

Respectfully submitted,

s/ Catherine A. Ceko
Catherine A. Ceko

E. Talley Gray
3349-E Lawrence-Suwanee Road
Suwanee, GA 30024
(678) 428-4868
(800) 878-0429
tallegray@yahoo.com

Cathleen M. Combs
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

T:\28266\Pleading\Plaintiff's Response to objections_Pleading.wpd

## CERTIFICATE OF SERVICE

I, Catherine A. Ceko, hereby certify that on January 20, 2014 the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification to the following counsel on record.

Joshua Threadcraft
joshua.threadcraft@burr.com
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

Jennifer E. Ziemann
jziemann@burr.com
BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

s/ Catherine A. Ceko
Catherine A. Ceko